## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **ERIC B. McCREADY** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00059 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Gregory R. Herrell, Arrington Schelin & Herrell, P.C., Bristol, Virginia, for Plaintiff; Eric Kressman, Regional Chief Counsel, Region III, Timothy F. Kennedy, Assistant Regional Counsel, Maija DiDomenico, Special Assistant United States Attorney, Social Security Administration, Office of the General Counsel, Philadelphia, Pennsylvania.*

In this social security case, I affirm the final decision of the Commissioner.

I

Eric B. McCready filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for supplemental security income benefits under title XVI of the Social Security Act, 42 U.S.C.A. §§ 1381-1383d (West 2012) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 1383(c)(3).

McCready initially applied for benefits on October 28, 2008, alleging disability beginning August 7, 2008, due to depression, panic attacks, bipolar disorder, and back pain from a herniated disc. On November 30, 2009, the Administrative Law Judge ("ALJ") held a hearing, at which McCready and a vocational expert testified. The ALJ issued a decision finding McCready not disabled on December 30, 2009. McCready died on February 15, 2011, from acute bilateral pneumonia, and the Appeals Council granted McCready's mother's request to be substituted as the party in the administrative proceedings as administrator of his estate. The Appeals Council denied the claimant's request for review on July 5, 2011. This action followed.[1]

II

McCready was twenty-nine years old at the time of the ALJ's decision denying benefits, a younger individual under the regulations. (R. at 46, 160.) *See* 20 C.F.R. § 404.1563(c) (2012). He had a twelfth grade education, with limited ability to read and write, and was placed in a special education program during high school. (R. at 179, 183.) McCready had past relevant work experience as a construction laborer, welder and electrical lineman, but had not engaged in

---

[1] Although McCready was deceased when the present suit was filed, it was brought in McCready's name, rather than by the administrator of his estate, his mother. *See* Fed. R. Civ. P. 17(a). I will sua sponte substitute the administrator as plaintiff in this action.

substantial gainful activity since August 7, 2007. (R. at 220-27.) McCready claimed his disability was based on back pain due to a herniated disc, and affective disorders including depression, anxiety, post-traumatic stress disorder and bipolar disorder. (R. at 212.)

The record reflects that in late 2007, McCready visited the Smyth County Community Hospital with complaints of leg pain and lower back pain. (R. at 297-99.) The hospital conducted a lumbar spine MRI, which revealed that McCready had small herniated discs. (R. at 294, 430.) Neurologist Matthew Wood, M.D., examined McCready and determined that surgical intervention would not be necessary and recommended conservative care. (R. at 301, 425.)

McCready's treating physician, Chelsea Hamman, M.D., prescribed MS Contin for McCready's back pain. (R. at 303, 305-06.) Dr. Hamman initially observed that McCready moved with antalgia while shifting from a sitting to a standing position, though later observed that McCready had no or minimal discomfort when moving from sitting to standing. (R. at 275, 363.) Dr. Hamman indicated that McCready was unable to stoop, bend, or crouch, but had no manipulative limitations on reaching, handling, feeling, grasping or fingering. (R. at 308.)

After reviewing McCready's medical record, state agency physician Robert McGuffin found that the plaintiff was limited due to his degenerative disease, but

could still perform light work with occasional climbing of ramps and stairs and occasional stooping, kneeling, crouching and crawling. (R. at 93.) The report indicated that McCready would never be able to climb ladders, ropes or scaffolds. (*Id.*)

The medical evidence also reflects that McCready suffered from psychological disorders. In numerous psychological evaluations, McCready complained of depression, anxiety and panic attacks. (R. at 273-286.) McCready also complained that he had trouble sleeping and frequently experienced nightmares and flashbacks, particularly relating to his father's death in a house fire. (R. at 306, 363, 376.)

McCready was treated by Dr. Hamman, who prescribed Wellbutrin, Xanax and Abilify to treat McCready's panic attacks, anxiety and depression. (R. 271-289.) Dr. Hamman continued to see McCready regularly for medication management of depression, anxiety, and post-traumatic stress disorder ("PTSD"). (*Id.*) Dr. Hamman indicated that McCready had an appropriate attitude and appearance, no delusions or hallucinations, fair thought content and organization, and a depressed mood and affect. (R. at 309-10.) McCready saw a licensed

clinical social worker, Janan Hurst, who assessed McCready with a global assessment of function ("GAF") score of 60.[2]  (R. at 327.)

McCready also received treatment from the Mount Rogers Community Service Board, where he participated in group and individual therapy sessions for anxiety and depression.  (R. at 312, 316, 327-28.)  Johnette B. Shabazz, LCSW, of Mount Rogers, noted that McCready appeared fearful and anxious, had intrusive thoughts and anhedonia, and experienced sleep disturbance.  (*Id.*)  Shabazz also observed that McCready was cooperative and oriented.  (R. at 312.)

On August 8, 2009, state agency psychologist Richard Milan, M.D., reviewed the record and concluded that the plaintiff was able to understand and remember simple instructions, concentrate, persist, relate with others and adapt in a low-stress work setting.  (R. at 95.)

McCready was referred by his attorney to see John W. Ludgate, Ph.D., for a psychological evaluation on August 25, 2009.  (R. 329-331.)  Based on that evaluation, Dr. Ludgate opined that McCready would have fair or poor ability to make occupational adjustments; good ability to understand, remember, and carry out simple job instructions; poor ability to behave in an emotionally stable manner; fair ability to relate predictably in social situations; and good ability to demonstrate

---

[2] A GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social or occupational functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

5

reliability. (R. at 334-35.) Dr. Ludgate opined that McCready's impairment would cause him to miss more than two days of work per month, but that McCready could handle his own benefits. (R. at 336.)

Based on the medical evidence in the record and testimony presented at the hearing, the ALJ determined that the claimant had the severe impairments of bipolar disorder, depression, anxiety and back pain. (R. at 26-31.) The ALJ concluded that the claimant's impairments did not meet a listing requirement under the regulations. (R. at 31.)

The ALJ determined that McCready had the residual functional capacity to perform unskilled work at a light level of exertion; could perform simple, routine and repetitive tasks; could make simple work-related decisions, with few, if any workplace changes, and only occasional interaction with the public and co-workers. (R. at 33-34.) Based upon the testimony of a vocational expert, the ALJ found that there existed a significant number of jobs in the national economy that the claimant could perform. (R. at 34-35.)

On February 3, 2011, more than a year after the ALJ had issued his decision, Patrick Farley, Ed.D., evaluated McCready and completed a medical assessment. (ECF No. 18 at 3.) Dr. Farley's analysis was not considered by the Appeals Council. Dr. Farley diagnosed McCready with post-traumatic stress disorder, generalized anxiety, major depression and mood disorder. (*Id.* at 2.) Dr. Farley

assigned him a GAF score of 55. (*Id.*)  In Dr. Farley's initial assessment of McCready, Dr. Farley opined that McCready could maintain gainful employment. (*Id.* at 3.)  Approximately three months later, after McCready had died, Dr. Farley completed a second mental assessment of McCready's ability to do work-related activities and opined that McCready had no useful ability to deal with the public, to use judgment with the public, to deal with work stresses, to maintain attention and concentration, to behave in an emotionally stable manner, to relate predictably in social situations or to demonstrate reliability. (*Id.* at 4-6.)  He also found that McCready had no useful ability to understand, remember or carry out complex and detailed job instructions, but had a fair ability to carry out simple job instructions. (*Id.*)  Dr. Farley opined that McCready's symptoms would prevent him from effectively managing day-to-day stressors in the workplace, and would cause him to miss more than two days of work per month. (*Id.* at 6.)

### III

The plaintiff contends that this case should be remanded because the Appeals Council failed to include into evidence the evaluation by Dr. Farley.  The plaintiff seeks a remand pursuant to sentence six of 42 U.S.C.A. § 405(g) (2011), which provides that a court may order additional evidence be taken before the Commissioner of Social Security, but "only upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The evidence must relate back to the time the application was first filed and it must be new, in that it cannot be merely cumulative. *Cameron v. Astrue*, No. 7:10cv00058, 2011 WL 2945817, at *7 (W.D. Va. July 21, 2011); *see also Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Additionally, the evidence "must be material to the extent that the Secretary's decision might reasonably have been different had the new evidence been before her." *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (internal quotation marks and citation omitted).

Dr. Farley's medical assessment is not cause for remand because it does not provide new, material evidence that could reasonably be calculated to change the ALJ's determination. Dr. Farley's evaluation is consistent with the ALJ's determination. When Dr. Farley examined McCready on February 3, 2011, twelve days before McCready died, Dr. Farley noted that he believed McCready was able to maintain gainful employment at that time pending receipt of reports from other providers. Moreover, Dr. Farley diagnosed McCready with a GAF score of 55, which denotes moderate symptoms or moderate difficulty in social, occupational or school functioning and is not significantly lower than the GAF score of 60 at which Hurst assessed McCready.

Dr. Farley did not see McCready again before issuing a medical assessment of McCready on May 5, 2011, almost three months after McCready had died. In this assessment — in contrast to his first assessment — he determined that McCready's symptoms and impairments would prevent him from effectively managing day-to-day stressors in the workplace. Dr. Farley, in his second assessment, does not provide support for why he changed his initial assessment of McCready's ability to work.

Additionally, Dr. Farley's medical assessment is cumulative or duplicative of evidence in the record, as there is already extensive evidence of McCready's psychological disorders and back pain. In fact, the plaintiff describes Dr. Farley's medical assessment as "evidence that *underscores* and *elaborates* upon the impairments." (Pl.'s Br. 18) (emphasis added).

Finally, Dr. Farley's assessment does not relate back to the time the application was first filed. Dr. Farley evaluated McCready almost a year after the ALJ issued his decision. Though Dr. Farley summarizes McCready's medical history that McCready presented to him, Dr. Farley makes no indication that either medical assessment applies to the relevant period. Additionally, in Dr. Farley's first evaluation, he diagnosed McCready pending receipt of reports from other treatment providers. His second assessment does not indicate whether he reviewed those reports in making his decision.

9

For the foregoing reasons, the evidence presented in Dr. Farley's medical assessment does not relate back to the relevant period and is not sufficiently new or material to remand the case to the Commissioner for further review.

IV

The claimant also contends that the ALJ's decision was not supported by a substantial weight of the evidence. Specifically, the claimant contends that the ALJ failed to accord proper weight to the medical opinion of Dr. Ludgate.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

There is substantial evidence to support the ALJ's finding that McCready was not disabled as defined under the Act.  The ALJ assessed the plaintiff's residual functional capacity, and limited the plaintiff to unskilled work at a light level of exertion; simple, routine and repetitive tasks; simple work-related decisions, with few, if any workplace changes, and only occasional interaction with the public and with co-workers.

The ALJ relied on Dr. Hamman's report, which noted only mild objective observations throughout McCready's treatment.  Dr. Hamman observed that McCready was doing better on Abilify, and observed that McCready had an appropriate attitude and appearance, no delusions or hallucinations, fair thought content and organization and a depressed mood and affect.  Additionally, the ALJ relied on evidence that therapy was yielding results, and that McCready was able to complete his therapy assignments, such as interacting with friends at a birthday party and taking a younger neighbor fishing.  Dr. Hamman's report also revealed that physically, McCready had only minimal discomfort in his back while moving from a sitting to a standing position and would have no limitations on reaching, handling, grasping or fingering.

Moreover, the ALJ appropriately relied upon the medical opinions of the state agency psychologist, Dr. Milan, who found that McCready would be able to understand and remember simple instructions, concentrate, persist, relate with

others and adapt in a low-stress work setting, and meet the basic mental demands of competitive work on a regular, ongoing basis despite the limitations arising from his impairment.  Additionally, state agency physician, Dr. McGuffin, found that the plaintiff could still perform light work with occasional climbing of ramps and stairs and occasional stooping, kneeling, crouching and crawling.  While not bound by these findings, the ALJ must consider the findings as opinion evidence from "highly qualified physicians and psychologists who are also experts in the evaluation of the medical issues in disability claims under the Act."  Social Security Ruling 96-6P, 1996 WL 374180 at *2 (1996); *see also Neitch v. Astrue*, No. 2:10CV00068, 2011 WL 3705113, at *5 (W.D. Va. Aug. 4, 2011).

Furthermore, the ALJ did not fail to accord proper weight to Dr. Ludgate's opinion.  In evaluating opinions from medical and non-medical sources, the ALJ relies on a number of factors, including the treatment relationship, the length of the treatment relationship, the supportability of the medical opinion, and the consistency of the medical opinion with the rest of the medical record.  20 C.F.R. § 404.1527(d)(2) (2012).  Based on these criteria, the ALJ properly concluded that Dr. Ludgate's assessment should be given only slight weight because Dr. Ludgate was not a treating source, and his assessment that the claimant had no useful ability for functioning in multiple areas was not consistent with other treating notes.  Furthermore, Dr. Ludgate's functional assessment was not supported because it did

not explain the basis of his opinion that the claimant would be absent from work for more than two days a month, or that he had no useful ability for behaving in an emotionally stable manner.  Additionally, Dr. Ludgate only saw McCready on one occasion.

As such, the ALJ's determination was supported by substantial evidence in the record.

V

Finally, the plaintiff contends that the ALJ erred in relying on an exhibit that was not provided to the plaintiff's counsel prior to the hearing.  The plaintiff asserts that during the ALJ hearing, he was unable to adequately respond or object to Exhibit 3A, Disability Determination Explanation ("the Exhibit"), because it was not provided in advance of the hearing.  The ALJ relied in part on the Exhibit to make his decision.

The burden of proving that this error was harmful rests on the plaintiff. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also Columbia Venture LLC v. S.C. Wildlife Fed'n*, 562 F.3d 290, 294 (4th Cir. 2009).  The plaintiff fails to demonstrate how this error would have affected the ALJ's decision.  The plaintiff did not explain how he would have responded or objected to the Exhibit.  Furthermore, the plaintiff received the Exhibit after the hearing, and failed to

respond or object during the ten-day period following the hearing, during which time the record was kept open.

The plaintiff also contends that because the Exhibit was not included in the medical records, the Exhibit does not qualify as medical evidence, and thus, the ALJ's decision was not supported by sufficient medical evidence.  Even if the Exhibit was not included in the medical record, the ALJ's decision was substantially supported by other evidence.  Additionally, the Exhibit was included in another section of the plaintiff's file.  The ALJ would have considered the Exhibit, even if it were not part of the medical record, because the ALJ considers all evidence in the claimant's case record when making a determination or decision regarding disability.  20 C.F.R. § 404.1520(a)(3)(2012).

## VI

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted.  A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   August 3, 2012

/s/  James P. Jones
United States District Judge